Argued November 8, affirmed December 31, 1973

RODASKY ET AL, *Appellants, v.*
LOUCKS ET AL, *Respondents.*

517 P2d 665

*Alan K. Brickley,* Portland, argued the cause for appellants. With him on the briefs were Davis, Jensen, DeFrancq & Holmes, Portland.

*Jeanyse R. Snow*, Astoria, argued the cause for respondents Loucks. With her on the brief were Mac-Donald, Dean, McCallister & Snow, Astoria. Also on the brief for respondent Gollersrud were Anderson, Fulton, Lavis & Van Thiel, Astoria.

HOWELL, J.

Plaintiffs filed this suit for specific performance of a real estate contract between defendants Loucks as sellers and plaintiff Rodasky as the purchaser. The trial court dismissed the suit, and plaintiffs appeal.

The defendants Loucks were interested in purchasing a dairy farm owned by defendant Gollersrud in Clatsop county. In 1968, after some negotiations, a lease-option agreement was executed, and defendants Loucks took possession of the farm. The agreement required the Louckses to pay a monthly rental, and $15,000 in cash if the option to purchase was exercised. The total purchase price of the land was $50,000.

Later the same year the plaintiff Rodasky, a land developer and contractor, contacted defendants Loucks about purchasing the property for the development of a golf course and home sites. In October, 1968, plaintiff Rodasky and the defendants Loucks executed an earnest money agreement and a contract of sale whereby Rodasky would purchase the property for $100,000. Rodasky paid $15,000 down and this sum was used by defendants Loucks to exercise their option to purchase the land from Gollersrud.

The contract between plaintiff Rodasky and defendants Loucks contained a provision for an acreage

release of various parcels of land to be made by the Louckses upon payment by Rodasky. In January, 1971, Rodasky made a formal demand on defendants Loucks for the release of certain lands under the contract. The Louckses were unable to comply with the acreage release portion of their contract with Rodasky because Gollersrud held title to the property, and the Loucks contract with Gollersrud did not contain an acreage release provision similar to the Rodasky-Loucks contract.

The plaintiffs filed this suit seeking specific performance of the acreage release provisions of the Rodasky-Loucks contract.[①]

The trial court allowed evidence to be introduced that plaintiff Rodasky knew at the time of the agreement that the Louckses did not have the funds to pay off the Loucks-Gollersrud contract, that Rodasky knew the latter contract did not contain acreage release provisions, and that plaintiff agreed to provide sufficient funds to pay off Gollersrud if that were necessary to place title to the property in defendants Loucks.

The trial court found that the Rodasky-Loucks contract was not a complete integration of the agreement because it failed to include a provision that Rodasky would provide sufficient funds to pay off Gollersrud if necessary so as to place the Louckses in a position to execute acreage releases to Rodasky.

The plaintiffs contend on appeal that the ad-

[①] Rodasky had assigned a one-half interest in the contract to his co-plaintiff, Heman Smith.

mission of such evidence violated the parol evidence rule.[2]

We conclude that the evidence was admissible as an exception to the parol evidence rule. Section 240 of Restatement of Contracts states:

"§ 240. (1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and * * *

"(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.

"* * * * * *"

Here the record establishes that there was an oral agreement between the Louckses and Rodasky that before the Louckses were obligated to provide acreage releases to Rodasky, Rodasky would provide the funds to pay off Gollersrud. Such agreement was not inconsistent with the integrated contract and was one that might naturally have been made as a separate agreement by the parties.

The facts relating to the oral agreement are set

---

[2] ORS 41.740 states:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the facts in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."

forth in the following memorandum opinion of the trial court:

"* * * It is the holding of this Court that the entire agreement between the plaintiffs and defendants Loucks anticipated that plaintiffs would have sufficient funds to pay off defendants Gollersrud when necessary or desirable and that they would do so in order to eliminate the Gollersrud interest in the real property in question and place defendants Loucks in a position where they could provide appropriate deed releases.

"The most important proof in this area is the evidence regarding the October 3, 1968 meeting at the Hilton Hotel between plaintiff Rodasky, and defendants Loucks and their attorneys. It appears that this evidence preponderates in favor of defendants Loucks to the extent that Mr. Rodasky was aware of Mr. Gollersrud's interest in the property, that he knew there were no, nor could there have been any, deed release provisions from Gollersrud to Loucks, and that Mr. Rodasky agreed to provide sufficient funds to completely buy out the Gollersruds should that become necessary. I further find that plaintiffs fully intended to do this until they were prevented from the same by adverse economic or 'tight money' conditions. There were other matters proved which lend credence to defendants Loucks position in this. I refer to such things as the title insurance policy which indicated the Gollersrud interest, the fact that the contract (Ex. 2) permitted payments by the plaintiffs directly to Gollersrud instead of to Loucks the sellers, and to the fact that plaintiffs down payment to Loucks was used to initiate the Loucks contract with Gollersrud. Furthermore, it occurs to the Court that deed release of lot provisions are common in, and ordinarily peculiar to real estate development purchase contracts, which was plaintiffs interest in this matter. This is to be contrasted with the Loucks interest in the property which was purely for agricultural purposes as may be seen from Ex. 2 and

which was apparent to Mr. Rodasky from his first meetings with the Loucks. It would be illogical for an experienced real estate developer like Mr. Rodasky to have ever anticipated that there would be any deed release provisions running in favor of an agricultural user like the Loucks from their predecessor in interest who had also been a dairy farmer."

We have examined the record and we completely agree with the above findings. The decree of the circuit court is in all respects affirmed.